UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SERVIPRONTO DE EL SALVADOR, S.A.,

              Plaintiff,

              -v.-

McDONALD'S CORPORATION,

              Defendant.

11 Civ. 4519 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

      On December 6, 2005, the Second Civil Court of El Salvador, Second Chamber, entered a judgment in favor of Plaintiff in the amount of $23,977,493.40 (the "Judgment"). Following the affirmance of the Judgment by the Supreme Court of Justice of El Salvador in June 2009, Plaintiff filed a motion for summary judgment in lieu of a complaint for enforcement of the Judgment, pursuant to Article 53 of the New York Civil Practice Law and Rules ("CPLR"), in New York State court. That action was then removed to this Court in July 2011. On September 4, 2012, before the motion could be resolved, Defendant deposited the amount of the Judgment in the Fourth Commercial Court of San Salvador in satisfaction of the Judgment. Plaintiff, however, argued to the courts in El Salvador that it was entitled to interest on the Judgment, and did not collect the amount deposited by Defendant while it appealed the issue of entitlement to interest.

      Now, after a long and tortuous procedural history in both this Court and the courts in El Salvador, Plaintiff has moved, pursuant to Federal Rule of Civil Procedure 56, for recognition and enforcement of the Judgment. Plaintiff

contends that it is entitled not only to recognition of the Judgment, but also to "post-foreign/pre-federal judgment interest" dating from the issuance of the Judgment in El Salvador to Plaintiff's collection in September 2019 of the principal that Defendant deposited in September 2012. Defendant brings a cross-motion to dismiss, pursuant to Rules 12(b)(1) and 12(b)(6), primarily arguing that its satisfaction of the Judgment mooted this action, and thus the Court lacks subject matter jurisdiction to adjudicate it further. For the reasons set forth in the remainder of this Opinion, the Court finds that this action has indeed been mooted, and therefore grants Defendant's motion to dismiss and denies Plaintiff's motion for summary judgment.

## BACKGROUND[1]

### A. The Proceedings in El Salvador

This action has its genesis in the Second Civil Court of El Salvador, Second Chamber's Judgment in favor of Plaintiff for $23,977,493.40, which was entered December 6, 2005. (Dkt. #1 at 11-12). Of note, the Judgment did not award either pre-judgment or post-judgment interest. (Bunge Decl., Ex. 1 at 95). Defendant appealed the Judgment first to the Supreme Court of Justice

---

[1] The facts in this Opinion are drawn from the Notice of Removal (Dkt. #1), which contains the original Notice of Motion for Summary Judgment in Lieu of Complaint in Action Upon Foreign Country Money Judgment and the Affidavit of Blaine H. Bortnick in Support of Motion for Summary Judgment in Lieu of Complaint; and from the exhibits attached to the Declaration of John C. Bunge in Support of Defendant's Motion to Dismiss ("Bunge Decl., Ex. [ ]" (Dkt. #190)).

For ease of reference, the Court refers to Plaintiff's brief in support of its motion for summary judgment as "Pl. Br." (Dkt. #188); Defendant's brief in support of its motion to dismiss as "Def. Br." (Dkt. #191); Plaintiff's opposing brief as "Pl. Opp." (Dkt. #192); Defendant's opposing brief as "Def. Opp." (Dkt. #193); Plaintiff's reply brief as "Pl. Reply" (Dkt. #196); and Defendant's reply brief as "Def. Reply" (Dkt. #197).

of El Salvador, which confirmed the Judgment on June 17, 2009 (Dkt. #1 at 12), and then to the Constitutional Chamber of the Supreme Court (*id.*). Eventually, Defendant exhausted its avenues of appeal, and on September 4, 2012, Defendant tendered the entire amount of the Judgment to the Fourth Commercial Court of San Salvador. (Def. Br. 4; Bunge Decl., Ex. 3, 10).

Plaintiff did not, however, immediately acquire the funds that Defendant deposited, in part because Plaintiff argued that it was also entitled to post-judgment interest due to Defendant's failure to pay the Judgment in a timely fashion. (Bunge Decl., Ex. 5 at 6, 10; *id.*, Ex. 10 at 5). In a decision dated October 12, 2012, the Second Civil Chamber of the First Section held that Plaintiff was not entitled to post-judgment interest because it had failed to make a timely request for such interest. (*Id.*, Ex. 5 at 10). This decision was affirmed on March 16, 2017, by the Second Court in Civil Matters of the First Section (*id.*, Ex. 6), and again on August 21, 2019, by the Second Civil Chamber (*id.*, Ex. 10 at 5). Following the August 21 decision, the First Mercantile Court entered an Order releasing to Plaintiff the funds that Defendant had deposited in 2012. (*Id.*, Ex. 8 at ¶ 6). By October 10, 2019, Plaintiff confirmed that it either already had or soon would receive the funds satisfying the 2005 Judgment. (Dkt. #185). As of October 23, 2019, the Salvadoran litigation was determined to be fully resolved, with the case file closed and sent to the General Archive in El Salvador. (Bunge Decl., Ex. 9 at ¶ 2).

**B.     The Proceedings in the United States**

Plaintiff initiated this action in New York State Supreme Court, New York County, on June 1, 2011, by filing a notice of motion for summary judgment in lieu of complaint. (Dkt. #1). Plaintiff's motion for summary judgment sought, pursuant to CPLR 3213 and 5303, recognition and enforcement of the Judgment. The affidavit accompanying Plaintiff's notice of motion indicated that the Judgment had not been paid or satisfied at the time of filing of the New York State action, and that the principal of the Judgment "with interest from December 6, 2005" was due and owing to Plaintiff. (Dkt. #1 at 13-14).

On July 1, 2011, Defendant removed the state court action to this District, with the Honorable Paul A. Crotty initially assigned to the matter. (Dkt. #1). A pre-motion conference was held on August 3, 2011, at which time Judge Crotty scheduled Defendant's motion to dismiss or stay the case. (Minute Entry for August 3, 2011). On August 19, 2011, Defendant filed a motion to dismiss pursuant to Rule 12(b)(6), with accompanying memorandum and declaration. (Dkt. #8-10). Plaintiff filed opposing papers on September 23, 2011 (Dkt. #15-16), and Defendant filed its reply brief on October 7, 2011 (Dkt. #17). Although there was oral argument scheduled for Defendant's motion on November 2, 2011 (Minute Entry for November 1, 2011), Defendant withdrew its motion at the hearing (on the grounds that developments in the El Salvador litigation had rendered its arguments moot), and the Court instead set a briefing schedule for Plaintiff's motion for summary judgment (Minute Entry for November 2, 2011). Defendant filed its papers in opposition to Plaintiff's

4

motion on December 19, 2011 (Dkt. #21-24), and Plaintiff filed its reply papers on January 17, 2012 (Dkt. #26-30).

On May 2, 2012, Plaintiff informed Judge Crotty that the Constitutional Chamber in El Salvador had denied Defendant's appeal, making the Judgment final, conclusive, and enforceable. (Dkt. #31). On September 28, 2012, Defendant requested a pre-motion conference relating to an anticipated motion to dismiss, this time pursuant to Rule 12(b)(1). (Dkt. #32). In its letter, Defendant informed Judge Crotty that it had paid the entirety of the Judgment on September 4, 2012, and therefore the case was moot. (*Id.*). Defendant also explained that Plaintiff had refused to dismiss either the action in El Salvador or the instant action because Plaintiff believed it was entitled to interest on the Judgment and would be pursuing that issue in El Salvador. (*Id.*). On October 2, 2012, Judge Crotty requested a further response and analysis from the parties upon the conclusion of the court proceedings in El Salvador. (*Id.*).

On June 28, 2013, Plaintiff wrote to Judge Crotty, noting that it had still not received the funds that Defendant had deposited because of its decision to appeal the issue of its entitlement to interest. (Dkt. #44). Given the potentially lengthy timeline for resolution of its appeals, Plaintiff requested that Judge Crotty permit Plaintiff to move forward with its motion for summary judgment. (*Id.*). On July 8, 2013, Defendant filed a response to Plaintiff's letter, reiterating its position that the case was moot due to Defendant's payment of the Judgment. (Dkt. #45). Defendant urged Judge Crotty to deny Plaintiff's motion for summary judgment and renewed its request to be granted leave to

5

move to dismiss the case pursuant to Rule 12(b)(1). (*Id.*). Plaintiff filed a reply letter on July 9, 2013. (Dkt. #46).

On July 12, 2013, Judge Crotty issued a notice of a pretrial conference for July 18, 2013. (Minute Entry for July 12, 2013). However, that conference was then cancelled after Judge Crotty denied Plaintiff's request for summary judgment. (Minute Entry for July 25, 2013; Dkt. #44). Judge Crotty found that Defendant had paid the Judgment amount into the court in El Salvador; that there was no appropriate suggestion that Defendant had acted improperly; and thus there was no basis for further action from the district court. (Dkt. #44).

On March 28, 2014, Judge Crotty, finding that there had been no activity in the instant action since July 18, 2013, ordered that the case be dismissed. (Dkt. #47). On April 10, 2014, Plaintiff moved for clarification as to whether Judge Crotty's order of dismissal dismissed the case without prejudice. (Dkt. #48-49). Defendant filed a memorandum in opposition to Plaintiff's motion on May 9, 2014. (Dkt. #50). On May 13, 2014, the instant action was reassigned to this Court. (Minute Entry for May 13, 2014). Plaintiff filed its reply brief on May 16, 2014. (Dkt. #51). On September 24, 2014, the Court issued an Opinion and Order finding that the prior dismissal had been without prejudice and ordering: (i) that the case be reopened; (ii) that the parties appear for a status conference on October 14, 2014; and (iii) that the parties file a joint status letter prior to the conference. (Dkt. #52).

Following the October 14 conference, Plaintiff informed the Court on October 31, 2014, that it did not wish to move for summary judgment at that time. (Dkt. #55). In response, the Court stayed the action, and ordered the parties to submit a letter every 90 days with an update on the status of the action in El Salvador until that action was resolved. (*Id.*). However, the Court removed the requirement that the parties file a regular status letter on February 3, 2015. (Dkt. #59).

On May 22, 2015, after the withdrawal of Plaintiff's counsel and the appearance of new counsel, the Court ordered the parties to submit a joint status letter in 90 days, and noted that the letter could include a request to lift the stay and proceed with motions. (Dkt. #71). On August 25, 2015, the parties submitted their joint status letter, with Plaintiff requesting that the stay be lifted and Defendant opposing that request. (Dkt. #72). The Court found that Plaintiff had failed to identify a sufficient basis for lifting the stay, and ordered the parties to submit another status letter in 90 days' time. (*Id.*).

On October 27, 2015, Plaintiff wrote to the Court and requested a conference at which it would discuss recent developments in El Salvador and argue why it should be permitted to proceed with its motion for summary judgment. (Dkt. #74). Defendant wrote an opposing letter on November 6, 2015. (Dkt. #75). The Court ordered the parties to address the issues raised in Plaintiff's letter in their next joint status letter. (Dkt. #76). The parties filed their joint status letter on December 21, 2015 (Dkt. #81), and in response the Court ordered that the case would remain stayed (Dkt. #82). On April 1, 2016,

Plaintiff wrote to the Court and requested a telephone conference due to alleged issues in drafting the joint letter with Defendant. (Dkt. #88). Defendant responded that same day, claiming that no telephone conference was needed. (Dkt. #89). Although the Court originally scheduled a telephone conference to discuss the purported issues (Dkt. #90), the Court later deemed such a conference unnecessary and instead ordered the parties to file a joint status letter in 90 days' time (Dkt. #91).

The parties submitted regular status letters on July 1, 2016 (Dkt. #92); October 6, 2016 (Dkt. #94); and January 4, 2017 (Dkt. #96). After each letter, the Court ordered the parties to file another status letter in approximately 90 days' time. (Dkt. #93, 95, 97). Due to issues involving the withdrawal of Plaintiff's counsel (Dkt. #104-110), the next status letter was not filed until August 11, 2017 (Dkt. #120). Upon receipt of that letter, the Court ordered the parties to file a joint status letter on or before the earlier of February 14, 2018, or the occurrence of a material change in the litigation in El Salvador. (Dkt. #121).

However, on October 20, 2017, Plaintiff filed a letter motion, with accompanying declaration, requesting that the Court either lift the stay and hold a hearing on Plaintiff's motion for summary judgment, or refer the parties to mediation. (Dkt. #123, 124, 127). Defendant filed a response in opposition on November 3, 2017 (Dkt. #130-131), and on November 6, 2017, the Court denied Plaintiff's request (Dkt. #132). On November 20, 2017, Plaintiff filed a motion for reconsideration, with supporting documents. (Dkt. #133-135).

Defendant filed opposing papers on December 4, 2017 (Dkt. #136-137), and Plaintiff filed reply papers on December 11, 2017 (Dkt. #138-139). On January 5, 2018, the Court issued an Opinion and Order denying Plaintiff's motion for reconsideration. (Dkt. #144).

On February 14, 2018, the parties filed a joint status report in which Plaintiff again requested that the stay be lifted. (Dkt. #145). On February 15, 2018, the Court denied Plaintiff's request and ordered a joint status letter by the earlier of August 14, 2018, or the occurrence of a material change in the litigation in El Salvador. (Dkt. #146). Plaintiff renewed its request for the stay to be lifted on September 14, 2018 (Dkt. #152), which Defendant opposed (Dkt. #155), and the Court again denied Plaintiff's request on October 3, 2018 (Dkt. #157). On May 3, 2019, after the withdrawal of Plaintiff's counsel (Dkt. #150) and the appearance of new counsel (Dkt. #161, 163), the parties filed a joint status letter with the Court (Dkt. #164). In response, the Court ordered that the case would remain stayed and that the parties file a joint status letter either within 180 days or within two weeks of any significant developments in El Salvador, whichever was earlier. (Dkt. #165).

On August 15, 2019, Plaintiff filed a letter with the Court, again requesting that the stay in the case be lifted. (Dkt. #169). Defendant filed a response on September 6, 2019, informing the Court that on August 21, 2019, the Second Court of Appeals of San Salvador had decided Plaintiff's most recent appeal in the underlying litigation and ordered the release of the Judgment funds to Plaintiff. (Dkt. #173). On September 9, 2019, the Court

granted Plaintiff leave to file a reply limited to the issue of why the August 21 Order of the Salvadoran court did not resolve the instant action. (Dkt. #175). Plaintiff filed its reply on September 11, 2019 (Dkt. #178), and in response the Court scheduled a conference to resolve Plaintiff's request to lift the stay (Dkt. #179). Prior to the conference, Defendant submitted a letter informing the Court that the First Mercantile Court had entered an order releasing the funds to Plaintiff, and that Plaintiff was in possession of a Deposit Delivery Order that it could present at the Ministry of Treasury to retrieve the Judgment amount. (Dkt. #181).

On October 10, 2019, the parties appeared before the Court for a hearing on whether the stay in the instant action should be lifted. (Minute Entry for October 10, 2019; Dkt. #185). Based on information that Plaintiff either had or was shortly going to receive the Judgment amount, and with the consent of both parties, the Court lifted the stay in the action. (Dkt. #185). The Court also ordered the parties to submit a briefing schedule for the motions now pending before this Court. (*Id.*). On November 18, 2019, Plaintiff submitted its motion for summary judgment, along with accompanying memorandum and exhibits. (Dkt. #187-188). That same day, Defendant filed its motion to dismiss, along with accompanying memorandum and declaration. (Dkt. #189-191). On December 18, 2019, the parties filed their opposing papers to each other's respective motions (Dkt. #192-195), and on January 6, 2020, the parties filed their reply papers (Dkt. #196-197). At no point in the almost nine

years that the instant action has existed was the Judgment domesticated here in the United States.

## DISCUSSION

**A.     The Court Dismisses This Action as Moot**

   **1.     Applicable Law**

      **a.     Motions to Dismiss Under Fed. R. Civ. P. 12(b)(1)**

Defendant's primary argument against both the continuation of this action and Plaintiff's motion for summary judgment is that this case is moot. (Def. Br. 8-9; Def. Opp. 9-10). A challenge raising the issue of mootness is analyzed under Rule 12(b)(1), since it implicates the Court's subject matter jurisdiction. *See Doyle* v. *Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("Under Article III of the U.S. Constitution, '[w]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action.'" (quoting *Fox* v. *Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994))). Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions. *See Carter* v. *HealthPort Technologies, LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see*

11

*also Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114 (2d Cir. 2017). A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d at 56. A plaintiff opposing such a motion bears "no evidentiary burden." *Id.* Instead, to resolve a facial Rule 12(b)(1) motion, a district court must "determine whether [the complaint and its exhibits] allege[ ] facts that" establish subject matter jurisdiction. *Id.* (quoting *Amidax Trading Grp.* V. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). And to make that determination, a court must accept the complaint's allegations as true "and draw[ ] all reasonable inferences in favor of the plaintiff." *Id.* at 57 (internal quotation marks and citation omitted).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits." *Id.* "In opposition to such a motion, [plaintiffs] must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz*, 872 F.3d at 119 (internal citations and quotations omitted). If a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to subject matter jurisdiction." *Carter*, 822 F.3d at 57.

### b. Mootness

Federal courts are courts of limited jurisdiction, "and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Platinum-Montaur Life Scis., LLC* v. *Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 616 (2d Cir. 2019). Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" thereby "restrict[ing] the authority of federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Genesis Healthcare Corp.* v. *Symczyk*, 569 U.S. 66, 71 (2013) (internal quotation marks omitted) (quoting *Valley Forge Christian College* v. *Americans for Separation of Church and State, Inc.*, 454 U.S. 471 (1982)). The "Case" and "Controversy" requirement places the burden on "those who invoke the power of a federal court to demonstrate standing — a 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 90 (2013).

A case ceases being a "Case" or "Controversy" — or, in other words, becomes moot — "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC*, 568 U.S. at 91. This is the case "n[o] matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit." *Id.* However, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin* v. *Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox* v. *Serv. Emps. Int'l Union, Local 1000*, 567 U.S.

298, 307-08 (2012)). "The party seeking to have the case dismissed bears the burden of demonstrating mootness[,] and that burden is a heavy one." *Chen-Oster* v. *Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 590 (S.D.N.Y. 2017) (internal brackets omitted) (quoting *Robinson* v. *Blank*, No. 11 Civ. 2480 (PAC) (DF), 2013 WL 2156040, at *13 (S.D.N.Y. May 20, 2013)).

### c. Article 53 of the CPLR

Plaintiff's action seeks recognition and enforcement of the Judgment — a process also known as "domestication," *see Huynh, So Muon* v. *Thach, Ly Sun*, 69 N.Y.S.3d 489, 489 (1st Dep't 2018) — pursuant to Article 53 of New York's CPLR. (Pl. Br. 1).[2] Article 53 "applies to any foreign country judgment which is final, conclusive and enforceable where rendered." N.Y. C.P.L.R. § 5302. Such a foreign judgment "is conclusive between the parties to the extent that it grants or denies recovery of a sum of money." *Id.* § 5303. "Article 53 was designed ... to promote the efficient enforcement of New York judgments abroad by assuring foreign jurisdictions that their judgments would receive streamlined enforcement here." *CIBC Mellon Tr. Co.* v. *Mora Hotel Corp. N.V.*, 100 N.Y.2d 215, 221 (2003). Crucially, the party seeking domestication under Article 53 "does not seek any *new relief* against the judgment debtor, but instead merely asks the court to perform its ministerial function of recognizing the foreign country judgment and converting it into a New York judgment." *Id.*

---

2   "New York law governs actions brought in New York to enforce foreign judgments." *Bridgeway Corp.* v. *Citibank*, 45 F. Supp. 2d 276, 285 (S.D.N.Y. 1999).

14

at 222 (emphasis added) (quoting *Lenchyshyn* v. *Pelko Elec.*, 723 N.Y.S.2d 285, 291 (4th Dep't 2001)).

## 2. Analysis

When it comes to the issue of mootness, the parties' contentions can be boiled down to two simple arguments. Defendant argues that it has paid the underlying Judgment, and that since this is an action for recognition and enforcement of a foreign judgment, there is nothing left for this Court to do. (Def. Br. 8). Plaintiff asserts that — regardless of Defendant's payment of the underlying Judgment — it has a legally cognizable claim for interest,[3] and until that claim has been satisfied the case is not moot. (Pl. Opp. 7). Plaintiff, for its part, makes a valiant effort of showing that New York courts have a practice of awarding post-foreign judgment interest when domesticating foreign judgments. (*See id.* at 8-10). Nevertheless, it is clear to the Court that this case is moot.

Four facts lead the Court to this inescapable conclusion. *First*, regardless of whether Defendant's original deposit of the Judgment amount satisfied the Judgment or not, Plaintiff has now received the funds owed to it. (Pl. Opp. 3). *Second*, numerous courts in El Salvador have affirmed that the Judgment is limited to the principal amount Plaintiff has received, and that Plaintiff is not entitled to interest on that Judgment. (*See* Bunge Decl., Ex. 5,

---

[3] Plaintiff describes its interest claim as one for "pre-federal/post-foreign judgment interest" (*see* Pl. Opp. 3), meaning that Plaintiff seeks interest that has accrued following the entry of the Judgment in El Salvador but prior to any entry of judgment in the instant action.

15

6, 10). *Third*, despite its best efforts, Plaintiff has failed to cite to any authority that supports the proposition that a party seeking domestication of a foreign judgment has a legally cognizable claim to interest where the underlying foreign judgment has been satisfied.

On this point, Plaintiff cites to numerous cases for the proposition that where a plaintiff has requested pre-judgment interest and not received it, a payment of the principal does not moot the action. *See Templin* v. *Indep. Blue Cross*, 487 F. App'x 6, 11-12 (3d Cir. 2012) (summary order) (finding, in an insurance-related action, that the "plaintiffs' unresolved demand for interest on ... withheld benefits preserve[d] their personal stake in litigation"); *Parella* v. *Ret. Bd. of R.I. Emps. Ret. Sys.*, 173 F.3d 46, 57 (1st Cir. 1999) (finding, in an insurance-related action, that case was not moot because plaintiffs had pleaded a claim for interest that rested "on an independent constitutional basis" from the withheld benefits); *Tucson Med. Ctr.* v. *Sullivan*, 947 F.2d 971, 977-79 (D.C. Cir. 1991) (finding, in an insurance-related action, that payment of the underlying claims did not moot a claim for interest); *Fields* v. *Ashford*, No. 17 Civ. 11812 (MFL), 2018 WL 2045955, at *2 (E.D. Mich. May 2, 2018) (finding, in an insurance-related action, that a remaining issue of entitlement to interest precluded the case from being mooted despite payment of benefits); *Schlembach* v. *Empire Blue Cross & Blue Shield*, No. 97 Civ. 4499 (JG), 1998 WL 817686, at *3 (E.D.N.Y. Feb. 18, 1998) (finding, in an insurance-related action, that the "[p]laintiffs' claim is still viable because they requested damages in the form of pre-judgment interest on their ERISA claim").

However, none of the above cases is relevant to this action. None of the cases arises out of Article 53 or any other analogous state law involving domestication of foreign judgments, and therefore they are inapposite insofar as they bear no resemblance to Article 53's limited purpose of recognizing a foreign judgment and converting it into a New York judgment. *See CIBC Mellon,* 100 N.Y.2d at 222. Moreover, most of the cases are ERISA actions, and as the *Schlembach* court noted, plaintiffs in ERISA actions have an independent entitlement to pre-judgment interest if liability is found. *See* 1998 WL 817686, at *3 n.3. And, as is evident, none of the cited cases constitutes binding authority on this Court.

Plaintiff's other cases come closer to the mark, but fare no better upon inspection. Relying on a collection of New York cases and one case from a sister court, Plaintiff asserts that "it is settled New York law that a foreign judgment domesticated in New York accrues post-foreign judgment interest from the date of such foreign judgment." (Pl. Opp. 8-10). With this principle, at least, the Court cannot disagree. It is clear under New York law that when an unsatisfied foreign judgment is domesticated in New York, courts may award post-foreign judgment interest dating from the entry of the foreign judgment. *See Abu Dhabi Commercial Bank PJSC* v. *Saad Trading, Contracting & Fin. Servs. Co.,* 986 N.Y.S.2d 454, 459 (1st Dep't 2014); *John Galliano, S.A.* v. *Stallion, Inc.,* 879 N.Y.S.2d 400, 401 (1st Dep't 2009); *Sung Hwan Co.* v. *Rite Aid Corp.,* 847 N.Y.S.2d 78, 79-80 (1st Dep't 2007). Indeed, were Plaintiff seeking to domesticate an unsatisfied foreign judgment here, the Court would

almost certainly award post-foreign judgment interest dating from the entry of the Judgment in El Salvador.

However, none of these cases involves the situation presently confronting this Court, which is that the Judgment — the underlying reason for this entire action — has been satisfied. None of Plaintiff's cases supports the idea that even when a foreign judgment has been satisfied, a plaintiff has a standalone claim for post-foreign judgment interest. Indeed, while it is clear from the above cases that New York law recognizes a court's ability to award post-foreign judgment interest in the course of domesticating an unsatisfied judgment, it is not similarly clear that New York law — or any jurisdiction's law — grants plaintiffs a legal right to interest on a satisfied judgment.

This finding is only reinforced by the *fourth* fact, which is that Article 53 has a clearly circumscribed purpose: to provide a means of recognizing and enforcing foreign judgments. As the Court has already noted, and as one of Plaintiff's own cases has recognized, parties proceeding under Article 53 are "merely ask[ing] the court to perform its ministerial function of recognizing the foreign country judgment and converting it into a New York judgment." *Abu Dhabi Commercial Bank*, 986 N.Y.S.2d at 457 (citing *CIBC Mellon*, 100 N.Y.2d at 222). Those parties are expressly "not seek[ing] any new relief against the judgment debtor." *Id.*

Given this limited function, it is clear that there is nothing for the Court to do. The Court's only function is to domesticate the Judgment so that it can be enforced, but that Judgment has already been paid in El Salvador. That is

where the inquiry must end. Moreover, given that the Judgment does not provide for the awarding of any interest (*see, e.g.,* Bunge Decl., Ex. 10), if Plaintiff were to seek interest in this forum, it would clearly be seeking new relief against Defendant.[4] The highest court in New York has made clear that this is not permitted, *see CIBC Mellon*, 100 N.Y.2d at 222, and it is not this Court's place to contravene that holding.[5] Accordingly, the Court dismisses this case as moot.[6]

**CONCLUSION**

For the reasons set forth in this Opinion, Defendant's motion to dismiss is GRANTED and Plaintiff's motion for summary judgment is DENIED. The

---

[4] Insofar as Plaintiff relies on *Louis Dreyfus Commodities Suisse, SA* v. *Financial Software Systems, Inc.*, 703 F. App'x 79, 84-85 (3d Cir. 2017) (unpublished decision), for the proposition that it is not barred from seeking interest because it failed to do so in El Salvador (Pl. Opp. 15), that case is also inapposite. *Louis Dreyfus* — an unpublished case from outside the Second Circuit and not dealing with New York law — held that a plaintiff was not required to seek post-judgment interest in the foreign forum to be entitled to such interest when domesticating the judgment. *See* 703 F. App'x at 85. Here, however, the Salvadoran courts have affirmatively and repeatedly held that Plaintiff has no entitlement to interest. (*See* Bunge Decl., Ex. 5, 6, 10). That distinction places this case on a substantially different footing.

[5] The Court also worries about the consequences of finding that a party seeking domestication of a foreign judgment is entitled to post-foreign judgment interest in circumstances where the foreign forum has expressly forbidden that relief to the party. Such a finding may incentivize parties to use New York courts to obtain compensation to which they are not entitled, which would in turn run afoul of comity, which is the animating principle behind domestication. *See Byblos Bank Eur.* v. *Sekerbank Turk Anonym Syrketi*, 10 N.Y.3d 243, 247 (2008) (describing comity as "the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states" (quoting *Société Nationale Industrielle Aerospatiale* v. *U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 543 n.27 (1987))).

[6] Given that this case is moot, the Court lacks subject matter jurisdiction to consider further the merits of this action. *See Lowell* v. *Lyft, Inc.*, 352 F. Supp. 3d 248, 253 (S.D.N.Y. 2018). Therefore, the Court does not consider — and must deny — Plaintiff's motion for summary judgment.

Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: April 6, 2020
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge